UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 10-CV-5025 (JFB) (WDW)
_____

BRIAN M. BUTLER,

Plaintiff,

VERSUS

BARACK OBAMA, TIMOTHY GEITHNER, ERIC HOLDER, & KATHLEEN SEBELIUS,

Defendants.

_____

**MEMORANDUM AND ORDER**
September 30, 2011
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Brian Butler ("plaintiff" or "Butler") commenced this action on November 1, 2010, against defendants United States President Barack Obama, Timothy Geithner, Eric Holder, and Kathleen Sebelius (collectively "defendants"), alleging various violations of his constitutional rights under the Fifth and Fourteenth Amendment pursuant to 42 U.S.C. § 1983. Specifically, plaintiff challenges the constitutionality of the minimum coverage provision of the Patient Protection and Affordable Health Care and Education Reconciliation Act, Pub L. No. 111-148, 124 Stat. 119 (Mar. 23, 2010), as amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (Mar. 30, 2010) (collectively the "ACA" or the "Act"). Plaintiff seeks both injunctive and declaratory relief against defendants.

Defendants have moved to dismiss plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1), on the grounds that he lacks standing to bring the action and that his claims are not ripe for adjudication. For the reasons set forth herein, the Court grants defendants' motion to dismiss the complaint in its entirety. Specifically, the Court concludes that plaintiff has failed to allege facts sufficient to confer standing. As a threshold matter, to the extent that plaintiff argues that he has standing because he will be required to purchase insurance or pay a penalty in 2014 when the minimum coverage provision goes into effect, that potential future injury is insufficient to confer standing on plaintiff to challenge the statute at this time. In fact, it

is not even clear from the complaint (and plaintiff's opposition papers) that plaintiff will be subject to the minimum coverage provision in 2014. Therefore, such a speculative, future injury simply fails as a matter of law to satisfy Article III's constitutional requirements for standing. Moreover, although plaintiff seeks to create standing by arguing that insurance premiums have increased as a result of the passage of the Act, that allegation also is insufficient to confer standing. First, plaintiff does not allege in the complaint that the purported increase in premiums from the passage of the health care law has had any financial impact on him. Instead, it is clear from the sworn statements of plaintiff and his wife that he does not currently pay health care insurance premiums; rather, they have paid for their family's health care needs out-of-pocket and continue to do so. Given there is no allegation that plaintiff has incurred any additional costs as a result of the purported increase in premiums, any such increase has not resulted in any financial injury to him from which he could even attempt to assert standing (an argument which would fail, in any event, for the other reasons noted below). Second, although plaintiff alleges that he has suffered an injury because he wanted to obtain catastrophic health insurance coverage but was unable to because of high premiums, plaintiff's arguments regarding the cause of those increased premiums involve other provisions of the Act unrelated to the individual mandate. It is well settled that a plaintiff cannot rely upon portions of a statute not being challenged to allege a causal injury for purposes of standing. Thus, any alleged increased premiums resulting from other unchallenged portions of the statute do not confer standing on plaintiff. In any event, to the extent plaintiff is seeking to allege that he has been subject to increased premiums or unable to purchase insurance because of increased premiums allegedly caused by the individual mandate, such conclusory assertions about the cause of these increased premiums are insufficient to satisfy the particularized injury requirement of Article III. Given the lack of standing by this plaintiff, the Court cannot (and does not) reach the merits of plaintiff's argument regarding the constitutionality of the ACA.

## I. BACKGROUND

### A. The Complaint[1]

Plaintiff challenges Section § 1501 of the Act. Specifically, plaintiff argues that the minimum essential coverage or "individual mandate" requirement, codified at 26 U.S.C. §5000A, is unconstitutional. Section 1501 requires that "for each month beginning after 2013" individuals, as defined by the statute, must ensure that they and "any dependent of the individual . . . [are] covered under minimum essential coverage for such month." 26 U.S.C. §5000A(a). Failure to obtain such minimum coverage would result in a "shared responsibility" penalty payment. 26 U.S.C. §5000A(b), (c). There are exemptions from both the individual mandate and penalty payment. They apply to those with certain religious beliefs, members of a health care sharing ministry, individuals for whom the cost of obtaining minimum coverage would exceed eight percent of their household income or whose income fell below a filing threshold, Indian tribe members, and others who are deemed to have a hardship in obtaining coverage. *See* 26 U.S.C. §5000A(d), (e).

---

[1] The following facts are taken from the complaint and are not findings of fact by the Court. Instead, the Court will assume the facts in the complaint to be true for purposes of the pending 12(b)(1) motion to dismiss.

2

Butler is a resident of New York over the age of eighteen who does not have health insurance and who is not eligible for Medicaid. (Compl. ¶¶ 1-2.) On or about September 27, 2010, plaintiff "inquired about obtaining 'catastrophic' or 'high deductible' insurance from Group Health Incorporated." (*Id.* ¶ 43.) Plaintiff was quoted a premium of $1564.52 per month, which was a thirty percent "policy increase." (*Id.* ¶¶ 45-46.) Plaintiff is not able to purchase catastrophic health care coverage and pay a penalty or fine under the individual mandate, which would apply to him even if he purchases the catastrophic coverage. (*Id.* ¶¶ 44, 48.)

B. Procedural History

Plaintiff filed the complaint on November 1, 2010. On January 3, 2011, defendants requested leave to file a motion to dismiss. On January 4, 2011, this Court waived the pre-motion conference requirement and set a briefing schedule for defendants' motion. On February 4, 2011, defendants filed their motion to dismiss. On March 7, 2011, plaintiff filed his opposition. On March 18, 2011, defendants filed their reply. The Court has fully considered the submissions and arguments of the parties.

II. STANDARD OF REVIEW

Defendants have moved to dismiss the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but we are not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but we may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

Because Butler is proceeding *pro se*, the Court will "construe his complaint liberally and interpret it 'to raise the strongest arguments that [it] suggest[s].'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)).

III. DISCUSSION

Plaintiff first asserts that he is being "compel[ed] and coerc[ed] . . . to purchase a specific product," namely the minimum coverage as mandated by the Act, "or be punished with a fine or penalty." (Compl. ¶ 20.) Second, plaintiff alleges that the Act "affected the health care insurance market in such a manner to cause detrimental harm" through increased premium rates "should Plaintiff choose to purchase a health care insurance plan." (*Id.* ¶ 25.) Defendants counter that plaintiff's alleged injuries are not actual or imminent. Specifically, defendants argue it is unclear whether plaintiff would be exempt from having to acquire the minimal coverage in 2014, when the Act would come into effect, and there is no indication that plaintiff intended to or has presently acquired an insurance plan at the allegedly higher premium. (Defs.' Mot. at 7; Defs.' Reply at 2.) This Court agrees with defendants and concludes that

plaintiff's claims must be dismissed for lack of standing.

### A. Legal Standard

As the Second Circuit has explained, "Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (citing U.S. Const. art. III, § 2 and *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471-72 (1982)). "It is axiomatic that '[t]here are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision.'" *Id.* (quoting *Kendall v. Employees Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009)); *see also Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 373 (2d Cir. 2004) ("To meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant." (internal quotation marks omitted)).

To meet Article III's injury-in-fact requirement, plaintiff's alleged injury "must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (additional quotation marks omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, (1992)); *see, e.g.*, *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) (finding that plaintiffs had adequately articulated Article III injury by alleging that they have paid higher tolls as a result of defendant's policy). Furthermore, the alleged injury must "affect[] the plaintiff in a personal and individual way to confirm that the plaintiff has a personal stake in the controversy and avoid having the federal courts serve as merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding." *Baur*, 352 F.3d at 632 (internal quotation marks and citations omitted).

### B. Analysis

1. Complying with the Individual Mandate

Plaintiff alleges in his complaint that he is an uninsured citizen taxpayer who is over the age of eighteen and who is not eligible for Medicaid. (Compl. ¶¶ 1-2.) Plaintiff further asserts that, due to the individual mandate coming into force, plaintiff will be compelled to either purchase coverage as required by the mandate or pay a penalty. (*Id.* ¶ 24.) Here, as discussed below, it is abundantly clear under the circumstances of this case (as alleged by plaintiff) that the possibility of having to pay a fine or purchase insurance in 2014 is a "conjectural and hypothetical" injury that does not rise to the level of a "concrete and particularized" actual or imminent injury needed to establish Article III standing.

First, plaintiff has wholly failed to allege any actual, present injury based on having to comply with the individual mandate. Instead, plaintiff's standing argument is based upon his belief that he will be subject to a future injury once the individual mandate becomes effective and is implemented in 2014. However, plaintiff has failed to allege any concrete, imminent injury. Based upon the allegations in the complaint, it is entirely unclear whether plaintiff is, or will be, exempt from the Act's

4

minimum coverage requirement. For example, in the complaint, plaintiff alleges that he would be unable to afford catastrophic coverage and also pay for a penalty for failing to comply with the individual mandate. (Compl. ¶ 48.) Thus, it is unclear if plaintiff is, or will be, exempt from the penalty even if he does not buy insurance because of his financial circumstances. In addition to his potential exemption based upon financial circumstances, other developments in plaintiff's current situation could change before the effective date of the individual mandate in 2014, which would avoid any injury to him from the implementation of the individual mandate such as, among other things, (1) he could choose to purchase health insurance before the effective date of Act in 2014, or (2) he could take a job before 2014 that offers health insurance. In short, it is clear that far from being imminent, any injury to plaintiff from the individual mandate in 2014 is speculative.[2] Although plaintiff may view standing as a malleable procedural obstacle that can be quickly cast aside to address an interesting and important constitutional issue, that is not the law. Instead, Article III standing is a fundamental constitutional requirement that prevents courts from unnecessarily reaching legal issues in situations where the party to the litigation has failed to allege an injury which triggers an actual case or controversy that needs resolution by the courts. *See Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 343 & n.19 (2d Cir. 2009) ("[T]he reasoning behind the imminence requirement is to ensure that the court avoids deciding a purely hypothetical case in which the projected harm may ultimately fail to occur." (internal quotation marks omitted)); *Baur*, 352 F.3d at 632 ("[T]o support standing, the plaintiff's injury must be actual or imminent to ensure that the court avoids deciding a purely hypothetical case in which the projected harm may ultimately fail to occur."); *Brito v. Mukasey*, 521 F.3d 160, 168 (2d Cir. 2008) ("Because [the plaintiff] alleges only a potential for [injury] that has not yet occurred and because that potential is born of nothing more than hypothesis and conjecture, [the plaintiff] lacks standing . . . ."). Here, based upon the allegations in the complaint and plaintiff's opposition papers, it is abundantly clear that plaintiff's alleged injury from the passage of the individual mandate is remote, speculative, and "at least partly within [his] own control." *Lujan*, 504 U.S. at 564 n.2. Under such circumstances, given plaintiff's failure to allege an actual or imminent injury that is concrete and particularized, he has no standing to bring this claim.

Numerous courts, including the Third and Ninth Circuits, have reached the same conclusion under analogous challenges to the individual mandate. For example, in *N.J. Physicians, Inc. v. Obama*, --- F.3d ---- , 2011 WL 3366340 (3d Cir. Aug. 3, 2011), the Third Circuit affirmed the district court's holding that the patient plaintiff lacked standing to challenge the individual mandate where the plaintiff merely claimed, as Butler does in the instant case, the he currently pays for his own health care. First, the Third Circuit noted that such allegations do not allege a current "actual" injury that is "concrete and particularized" because "[t]here are no facts alleged to indicate that [plaintiff] is in any way presently impacted by the Act or the mandate." *Id*. at *4. Second, the Third Circuit explained that plaintiff's allegations do not establish an

---

[2] In his opposition affidavit, plaintiff attempts to provide more information to demonstrate that he will not be exempt—such as that he is self-employed. However, even considering this additional information, it is still entirely unclear whether his circumstances may change or he may be exempt for some other reason, including his financial circumstances.

5

"imminent" injury that is "concrete and particularized":

> Roe's allegations do not establish that a future "concrete and particularized" injury is "imminent." As an initial matter, the complaint is entirely silent as to whether Roe will be a non-exempt "applicable individual" subject to the mandate's requirement to obtain "minimum essential coverage" in 2014. This omission, taken in isolation, would not necessarily be fatal to the standing analysis if Roe was otherwise able to establish a "realistic danger" that he would be harmed by the individual mandate. Roe, however, has alleged no predicate facts to demonstrate that his situation will even change when the individual mandate takes effect on January 1, 2014. There is nothing inherent in the terms of the mandate that will alter Roe's current reality, at least as that reality is set forth in the plaintiffs' complaint. Roe will continue to be free to choose "who and how" to pay for his health care needs, including by paying for those needs out of his own pocket. The individual mandate may, of course, impact Roe depending on the precise "who and how" he chooses. Absent more specific allegations, however, we simply cannot conclude on the record before us that there is a realistic danger or genuine probability that Roe will suffer a cognizable imminent injury resulting from the individual mandate.

*Id*.

Similarly, in *Baldwin v. Sebelius*, No. 10CV1033 DMS (WMC), 2010 WL 3418436, at *3 (S.D. Cal. Aug. 27, 2010), *aff'd*, --- F.3d ---- , 2011 WL 3524287 (9th Cir. Aug. 12, 2011), the district court held that plaintiff had no standing to challenge the individual mandate because plaintiff "may well satisfy the minimum coverage provision of the Act by 2014: he may take a job that offers health insurance, or qualify for Medicaid . . . or he may choose to purchase health insurance before the effective date of the Act." In affirming that decision, the Ninth Circuit emphasized:

> [Plaintiff] alleges that he objects to the "individual mandate" and does not consent to being compelled by the Act to maintain health care insurance as Congress lacks authority under Article I of the Constitution to enact such legislation. But an objection of this sort is simply a generalized grievance, for which no standing lies.

*Baldwin*, 2011 WL 3524287, at *1.

Several other district courts have also reached the same conclusion on standing with respect to the individual mandate in the face of similar allegations as those present in the instant case. *See, e.g., Bryant v. Holder*, No. 2:10-CV-76-KS-MTP, 2011 WL 710693, at *11 (S.D. Miss. Feb. 3, 2011) (noting that "it is not certain from Plaintiffs' allegations that, in the event they were considered 'applicable individuals,' they would incur the tax penalty for non-compliance[,]" concluding that the allegations in the complaint were insufficient to make that assessment and ultimately determining that plaintiffs failed to satisfy the standing requirements); *Purpura v. Sebelius*, No. 10-04814, 2011 WL 1547768, at *8 (D.N.J. Apr. 21, 2011) (concluding that plaintiffs failed to demonstrate that they will be subject to the individual mandate where "[f]or example,

6

the Complaint does not indicate, *inter alia*, whether . . . they may be employed in the future by an entity that will be required to provide health insurance under the Act[,] . . . whether they may fall into one of the exemptions to the Individual Mandate, i.e., the insufficient income exemption[, or] . . . that [plaintiffs] will refrain from purchasing health insurance before the Mandate becomes effective" (internal citations omitted)); *Bellow v. United States Dep't of Health & Human Services*, No. 1:10-CV-165, 2011 WL 2470456, at *12 (E.D. Tex. Mar. 21, 2011) (The court held that plaintiff's complaint "does not allege that he will be unemployable in 2014 or unable to secure insurance with his employer in 2014. He also does not offer any facts suggesting that even if he does not obtain insurance, he may have insufficient income in 2014 to become liable for any penalty. Accordingly, because the plaintiff has pled minimal facts about his personal situation and failed to plead specific information about his employment, financial information, and whether he is insured, there is a real possibility that he will neither have to pay for insurance nor be subject to the penalty." (internal citations omitted)); *Shreeve v. Obama*, No. 1:10-cv-71, 2010 WL 4628177, at *4 (E.D. Tenn. Nov. 4, 2010) (holding that plaintiffs had no standing to challenge the Act).

Although several other courts have found plaintiffs had standing to challenge the individual mandate, those cases are distinguishable from the instant case on two grounds. First, in many of those cases, the plaintiffs alleged some current financial injury based upon their preparation for the implementation of the individual mandate in the Act.[3] *See, e.g., Calvey v. Obama*, --- F. Supp. 2d ----, 2011 WL 2135736, at *4 (W.D. Ok. Apr. 26, 2011) (concluding that "the purchase of health insurance by Plaintiffs who do not wish (or otherwise plan) to purchase it is a concrete injury" where it was not disputed by defendants and where "[i]t may reasonably be inferred from Plaintiffs' allegations that they must take steps now in preparation for the imminent requirement of the Act that they purchase health insurance, that it is likely that Plaintiffs will be subject to the minimum coverage." (citations omitted)); *Mead v. Holder*, 766 F. Supp. 2d 16, 26 (D.D.C. 2011) (plaintiffs suffered an actual injury where they alleged that they were "adjust[ing] their finances [] by setting aside money to pay the anticipated penalties"); *Liberty University, Inc. v. Geithner*, 753 F. Supp. 2d 611, 623-34 (W.D. Va. 2010), *vacated on other grounds*, No. 10-2347, 2011 U.S. App. LEXIS 18618 (4th Cir. Sep. 8, 2011) (district court deemed individual plaintiffs' allegations of injury based on making "significant and costly changes in their personal financial planning, necessitating significant lifestyle . . . changes" a concrete and particularized injury fairly traceable to the mandatory coverage requirement (quotation marks omitted)); *Goudy-Bachman v. United States Dep't of Health & Human Services*, 764 F. Supp. 2d 684, 692 (M.D. Pa. 2011) (same); *Thomas More L. Center v. Obama*, 720 F. Supp. 2d 882, 888-89 (E.D. Mich. 2010),

---

[3] To the extent that at least one court has suggested that such an injury can be assumed (even without particular factual allegations to support it), this Court respectfully disagrees. *See, e.g., U.S. Citizens Ass'n v. Sebelius*, 754 F. Supp. 2d 903, 905-08 (N.D. Ohio 2010) (the court concluded that the individual plaintiffs satisfied standing requirements because "responsible individuals . . . will have to start making plans now or very shortly to comply with the Act's various mandates" without referring to allegations of injury actually made by plaintiffs).

7

*aff'd* --- F.3d ----, 2011 WL 2556039, at *3 (6th Cir. June 29, 2011) (district court concluded that plaintiffs' alleged injury of having to "reorganize their affairs" to prepare financially to pay for the minimum coverage requirement was a particularized injury that was fairly traceable to the individual mandate in the Act); *Florida v. United States Dep't of Health & Human Services*, 716 F. Supp. 2d 1120, 1144-48 (N.D. Fla. 2010) (concluding that the individual plaintiffs satisfied standing where one alleged that she would have to "reorder . . . economic circumstances" to purchase insurance under the mandate).

Second, in other cases where courts have found standing to challenge the individual mandate, it was clear to the court from the allegations that the plaintiff did not qualify for any exemption at the time the complaint was filed and there was no indication that he would do so by the time the Act was effective. *See, e.g., Thomas More L. Center*, 2011 WL 2556039, at *4-6 (concluding that plaintiffs demonstrated both actual and imminent injury; imminent injury was present where "[t]here [was] no reason to think that plaintiffs' situation will change" and where there was no indication that plaintiffs qualified for an exemption at the time of filing the complaint or would do so by the time the Act was effective); *Mead*, 766 F. Supp. at 20-26 (the court found plaintiffs satisfied standing requirements where they specifically alleged that they "do not qualify for any of the exemptions" under the Act, that they did not qualify for Medicaid or Medicare, and that they objected to the individual mandate for religious reasons, concluding that there is a "substantial probability" that plaintiffs will be subject to the individual mandate and have alleged an imminent injury); *see also Florida*, 716 F. Supp. 2d at 1145-48 (concluding that the individual plaintiffs satisfied standing where one alleged that he had no desire to purchase insurance, was not qualified for Medicaid or Medicare, and was financially able to pay for medical needs out of pocket).[4]

In short, the Court concludes that Butler has failed to demonstrate a concrete injury based on the possibility that, in 2014, he may have to purchase insurance under the individual mandate or pay a fine.

2. Premium Increase

To the extent that plaintiff also seeks to satisfy the standing requirement by relying on allegedly higher insurance premiums as a source of his injury, the Court also finds this argument unpersuasive under the circumstances of this case. In particular, as discussed below, plaintiff is not currently subject to any health insurance premiums. Moreover, to the extent he attempts to allege a generalized injury regarding his inability to afford certain health insurance due to increased premiums, that alleged injury fails to establish standing because he has failed to allege a causal link between the alleged injury and individual mandate, as opposed to other unchallenged provisions of the Act. In addition, any attempt by plaintiff to link such injury to the individual mandate is purely conclusory in nature.

As an initial matter, plaintiff concedes that he and his wife currently pay for their family's health care needs out-of-pocket and, thus, are not currently subject to any

---

[4] The Court notes that other decisions that have addressed standing did so in an entirely different and distinguishable context where, for example, the plaintiff is a State. *See, e.g., Virginia v. Sebelius*, 702 F. Supp. 2d 598, 604-07 (E.D. Va. 2010), *rev'd* --- F.3d ---- , 2011 WL 3925617, at *2 (4th Cir. Sept. 8, 2011) (distinguishable as a case filed on behalf of the State of Virginia by the Attorney General of the state).

8

alleged increased premiums.[5] (Compl. ¶ 1; Pl.'s Aff. in Opp. ¶¶ 3(C), 3(H).) Instead, plaintiff alleges that he tried to get certain catastrophic health insurance, but was unable to afford such insurance due to premium increases already caused by the Act. In particular, in his complaint, plaintiff alleges that he contacted Group Health Incorporated to "inquire[]" about their catastrophic or high deductible insurance policy and based on the estimate he was given, plaintiff concluded that "the actions of the Defendants ha[ve] caused the premiums of a 'catastrophic' or 'high deductible' policy to increase 30%." (Compl. ¶¶ 43-46.) It is unclear whether plaintiff simply attempted to get a quote or was actually interested in obtaining such insurance. However, plaintiff added additional allegations in his opposition papers about his claim of injury based on increased premiums.[6] Plaintiff's affidavit in opposition to the motion to dismiss explained that he allegedly attempted to obtain limited insurance coverage, but was unable to do so due to allegedly higher premiums. Specifically, plaintiff asserted that he "attempted to open a Health Savings Account (HAS) [account] in order to obtain the benefit of paying for me and my families [sic] health care needs with pretax dollars, but I was denied due to the requirement of a certain 'catastrophic' or 'high deductible' plan." (Pl.'s Aff. in Opp. ¶ 3(E).) Approximately one month later, plaintiff "attempted to purchase" catastrophic coverage so as to open an HSA account but the "premium for this policy was approximately 30% higher than 90 days prior, caused by the actions of the Defendants . . . ." (*Id*. ¶ 3(F).) In explaining the reasons behind the premium increase, plaintiff relied on provisions other than the individual mandate that have already taken effect. (Pl.'s Opp. at 3.)

Plaintiff's attempt to satisfy the standing requirement based upon purported increases in insurance premiums that he argues are preventing him from buying insurance fails for three reasons. First, to the extent plaintiff is alleging a generalized injury of increased insurance premiums for the public as a whole, such an injury cannot satisfy the particularized injury requirement mandated by Article III. *See, e.g., Lujan*, 504 U.S. at 573-74 ("[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest . . . and seeking relief that no more directly and tangibly benefits

---

[5] Moreover, any assertion that the individual mandate will cause premiums to rise in the future when it goes into effect would clearly be too remote and speculative to satisfy the standing requirement.

[6] Though a court may consider affidavits and other material outside of the complaint on a Rule 12(b)(1) motion, the Court need not accept conclusory allegations as true and need not consider facts that could have been pleaded in plaintiff's original complaint. *See, e.g., Shreeve*, 2010 WL 4628177, at *4 (refusing to consider new injury alleged by plaintiff in challenging the individual mandate, concluding that the Court "will not consider facts that could have been pleaded in Plaintiffs's original complaint and amended complaints"); *Bellow*, 2011 WL 2470456, at *12. However, in an abundance of caution, the Court has fully considered the additional information contained in plaintiff's opposition, as if it were part of his complaint. As noted above, after considering the additional allegations and information contained in the opposition papers, the Court still concludes that plaintiff does not have standing based upon the purported insurance premiums that he asserts are caused by the Act and impacting his ability to obtain certain insurance. Thus, any motion to amend to add this additional information to the complaint to support standing would be futile.

him than it does the public at large—does not state an Article III case or controversy.")

Second, plaintiff attempts to point to other provisions of the Act as allegedly causing the increased premium—not the individual mandate. For example, plaintiff seems to argue that he "can no longer freely purchase a 'child only' health insurance policy for his children." (Pl.'s Opp. at 8.)[7] Plaintiff, however, cannot rely on portions of the Act not being challenged to allege an injury in order to have standing to challenge the individual mandate; rather, there must be a causal connection between the injury and the individual mandate provision of the Act. *See Lewis v. Casey*, 518 U.S. 343, 358 n. 6 (1996) ("standing is not dispensed in gross"); *Lee v. Bd. of Governors of the Federal Reserve Sys.*, 118 F.3d 905, 914 (2d Cir. 1997) ("[A]n allegation of antitrust injury would relate only to the antitrust claims; it would not confer standing with respect to the main claims advanced by the petitioners"); *see also Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 429-30 (4th Cir. 2007) ("[A] plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by application of those provisions."). Therefore, any alleged injuries plaintiff attempts to assert from other provisions of the Act—such as any potential injury from the Act's requirement that insurers may not deny coverage to children because of pre-existing conditions—does not as a matter of law give him standing to challenge the separate, individual mandate provision. *See, e.g., Shreeve*, 2010 WL 4628177, at *6 ("The fact [that] Plaintiffs may have standing to challenge one" of the Act's provisions "does not mean [Plaintiffs have] standing to challenge all of them at this time." (internal quotation marks omitted)).

Third, to the extent plaintiff may be alleging that the individual mandate played a role in the purported premium increase that plaintiff asserts is particularly affecting his ability to buy certain health insurance, plaintiff has altogether failed to allege an injury and causation that are not entirely conclusory in nature. An injury only confers standing if it is "likely, as opposed to merely speculative, that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561. Here, regardless of the prospective implementation of the individual mandate, insurance companies have broad discretion in the setting of premiums, and plaintiff has failed to allege any basis for concluding that the elimination of the individual mandate will result in insurance premium decreases for the health coverage that he currently seeks to purchase. In short, plaintiff is

---

[7] Similarly, in his opposition, plaintiff points to newspaper articles and a report from the Congressional Budget Office (CBO) on the issue of increased premiums. However, these sources do not, in fact, link the individual mandate to any such increases. The newspaper articles do discuss premium increases, but do not link the hikes to the individual mandate. In fact, one of the articles states that insurance companies were claiming that increases to premiums were necessary based on other provisions in the Act, including "letting children stay on their parents' insurance policies until age 26, eliminating co-payments for preventive care and barring insurers from denying policies to children with pre-existing conditions, plus the elimination of the coverage caps." (Pl.'s Opp. Ex. 2, at 2.) The other articles relied on by plaintiff discuss increased premiums for ill children allegedly due to the fact that parents of ill children could purchase last-minute child-only insurance under the Act when treatment was necessary. (*Id*. Ex. 5-6.) The CBO report, dated November 30, 2009, addressed possible increases and decreases in premium rates as a result of the Act. The report notes that predicted increases in premiums were due to "a greater amount of coverage" that would be obtained in each insurance package. (Pl.'s Opp. Ex. 3, at 6.)

simply speculating how insurance companies might react if the Act is struck down as unconstitutional. *See, e.g., Peterson v. United States*, 774 F. Supp. 2d 418, 421-26 (D.N.H. 2011) (the court concluded that "a judgment in [plaintiff's] favor would not require [the insurer] to rescind or reduce the premium increases" and plaintiff was "merely speculating about how a third party might respond if the Act is struck down as unconstitutional" though plaintiff alleged that he: (1) purchased supplemental private insurance; (2) received a letter from the insurance company providing that coverage premium was increased because of the Act; and (3) according to media reports, plaintiff's insurance company was one of a number attributing rising premiums to the Act). As the jurisprudence of the Supreme Court and Second Circuit has clearly articulated, such speculation is insufficient to confer Article III standing. For example, in *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 28 (1976), plaintiffs sought to challenge the IRS's approval of favorable tax treatment for "nonprofit hospital[s] that offered only emergency-room services to indigents." In connection with that challenge, the indigent plaintiffs claimed that the IRS policy "encouraged hospitals to deny services to indigents," and had caused denial of medical services to plaintiffs. *Id*. at 40-42 (internal quotation marks omitted). In holding that the plaintiffs' allegations were insufficient to establish standing, the Supreme Court emphasized that "the 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Id.* at 41-42. The Court further explained:

> It is purely speculative whether the denials of service specified in the complaint can be traced to petitioners' "encouragement" or instead result from decisions made by the hospitals without regard to the tax implications. It is equally speculative whether the desired exercise of the court's remedial powers in this suit would result in the availability to respondents of such services. So far as the complaint sheds light, it is just as plausible that the hospitals to which respondents may apply for service would elect to forgo favorable tax treatment to avoid the undetermined financial drain of an increase in the level of uncompensated services.

*Id*. at 42. Thus, the Court concluded that "the complaint suggests no substantial likelihood that victory in this suit would result in respondents' receiving the hospital treatment they desire," and further noted that "[a] federal court, properly cognizant of the Art. III limitation upon its jurisdiction, must require more than respondents have shown before proceeding to the merits." *Id*. at 45-46.

Similarly, in *Garelick v. Sullivan*, 987 F.2d 913, 918 (2d Cir. 1993), plaintiffs argued they had standing to challenge a statute that imposed caps on the fees physicians could charge for certain services because the statute resulted in physicians charging higher rates for limited income patients, such as plaintiffs. The Second Circuit found those allegations of rate increases allegedly caused by the statute to be insufficient to confer standing on plaintiffs to challenge the statute:

> [E]ven if some physicians chose to increase their charges to limited-income patients in response to the limiting charge scheme, the plaintiff beneficiaries probably would still

11

lack standing. Any increases in the amounts charged to limited-income patients would be the product of independent choices by physicians from among a range of economic options, . . . not a necessary product of the challenged legislative scheme. Because the beneficiary plaintiffs have failed to establish that their injuries are fairly traceable to the limiting charge scheme, they lack standing to assert their claims.

*Id*. at 920; *see also Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006) ("There is no redressability, and thus no standing, where (as is the case here) any prospective benefits depend on an independent actor who retains broad and legitimate discretion the courts cannot presume either to control or to predict." (internal quotation marks omitted)); *Burton v. Central Interstate Low-Level Radioactive Waste Compact Comm'n*, 23 F.3d 208, 210 (8th Cir. 1994) (holding that plaintiff had no standing because the complaint "does not allege . . . that state law obligates [the provider] to base its rates in any way on [the] costs" at issue, and therefore "it is merely speculative here whether a favorable decision would affect the . . . rate that [plaintiff] pays" (internal quotation marks omitted)); *Common Cause v. Dep't of Energy*, 702 F.2d 245, 251 (D.C. Cir. 1983) ("[W]here injury is alleged to occur within a market context, the concepts of causation and redressability become particularly nebulous and subject to contradictory, and frequently unprovable, analyses.").

As in *Simon* and *Garelick*, any conclusory assertion by plaintiff in the instant case about current premiums and the individual mandate—namely, that the individual mandate is causing insurance premiums to increase for certain types of insurance he wishes to purchase—is insufficient to establish standing where the setting of such premiums involves the independent decisions of insurance companies in response to a whole variety of potential factors—including the statutory and regulatory framework, as well as general market conditions. Therefore, plaintiff has no standing based upon any alleged increases in insurance premiums arising from the passage of the Act.

\* \* \*

In sum, given the allegations in the instant case, plaintiff has no standing to challenge the individual mandate based upon either (1) the possibility that he may have to purchase insurance or pay a penalty in 2014 when the minimum coverage provision goes into effect, or (2) any alleged current increase in insurance premiums which plaintiff asserts are caused by the Act's passage.[8]

## IV. LEAVE TO RE-PLEAD

Plaintiff has not requested leave to re-plead. Nevertheless, even in the absence of such a request, the Court has considered the issue. Under Rule 15(a) of the Federal

---

[8] Defendants also argue that the challenge to the minimum coverage provision is not ripe. The Court agrees. It is well settled that, where the issue is whether the injury is imminent or immediate enough to confer standing, the ripeness and standing analysis converge and apply interchangeably. *See Thomas More L. Center*, 2011 WL 2556039, at \*5 ("[W]here the only Article III question concerns the imminence of the plaintiffs' injury, standing analysis parallels ripeness analysis."). In other words, for the same reasons (discussed *supra*) that the Court finds the alleged injury by plaintiff not sufficiently immediate or imminent to support standing, the Court also finds that plaintiff's challenge to the individual mandate is not ripe as to this plaintiff.

12

Rules of Civil Procedure, "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Even under this liberal standard, it appears that any attempt to re-plead in this case would be futile based upon the Court's review of the Complaint and plaintiff's opposition papers. *See supra* note 5. However, in an abundance of caution, the Court will given plaintiff an opportunity to be heard on the issue of leave to re-plead so that, before the Court decides whether leave to re-plead is warranted, plaintiff can explain what, if any, additional allegations he would be seeking to add to overcome these defects and why such additional allegations would not be futile.

## V. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss the complaint in its entirety due to lack of standing. Plaintiff shall submit a letter to the Court by October 28, 2011, indicating whether he wishes to have leave to re-plead and, if so, what additional allegations he would be seeking to add to establish standing. Defendants shall respond to that letter by November 18, 2011. Plaintiff's failure to submit such a letter by October 28, 2011 will result in the case being closed.

SO ORDERED.

_____
Judge Joseph F. Bianco
United States District Judge

Date: September 30, 2011
Central Islip, NY

\* \* \*

Plaintiff is appearing *pro se*. The defendants are represented by Michelle R. Bennett, Esq., U.S. Department of Justice, Civil Division, Federal Programs Branch, 20 Massachusetts Ave., Washington, D.C. 20001.